UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID HURLEY,

    Plaintiff,

v.     Case No. 23-CV-42

VARIAN MEDICAL SYSTEMS,

    Defendant.

## DECISION AND ORDER

**1. Facts and Background**

Varian Medical Systems provides hospitals with hardware and software used in cancer treatment. (ECF No. 29, ¶¶ 1-3.) Varian employed between 40 and 45 software field service representatives across the United States. (ECF No. 29, ¶ 34.) David Hurley was a software field service representative for Varian, servicing Varian equipment used by hospitals and other medical facilities offering cancer care and treatment. (ECF No. 29, ¶ 8.) With one exception, Hurley handled all of Varian's customers in Wisconsin. (ECF No. 29, ¶ 38.) His territory also included sites in Iowa and at least one site in the Upper Peninsula of Michigan. (ECF No. 29, ¶ 37.)

Hurley's job allowed him to work largely remotely but sometimes required him to visit customers. (ECF Nos. 29, ¶ 9; 31, ¶¶ 1-2, 4.) For example, from November 1, 2020, through October 31, 2021, Hurley drove about 5,000 miles in his company-supplied car to perform work at customers' facilities. (ECF No. 29, ¶¶ 10-13.) He drove about 12,000 miles in calendar years 2019 and 2020. (ECF No. 31, ¶ 19.)

On August 31, 2021, Varian announced that all of its "customer-facing" employees were required to be vaccinated against Covid-19. (ECF No. 29, ¶ 48.) Certain of Varian's customers also required that its vendors be vaccinated before entering the customers' facilities. (ECF No. 29, ¶ 69.) Because Hurley needed to perform some of his work at customers' facilities, he needed to meet the customers' rules for vendor access. (ECF No. 29, ¶ 39.)

Varian's Covid-19 policy allowed employees to seek religious exemptions. (ECF No. 29, ¶¶ 47-53.) On September 13, 2021, Hurley sought such a religious exemption, stating that, based on his own online research, he concluded that all available vaccines were derived from aborted fetal cells and, because he is pro-life, he "can't benefit indirectly or directly from anything with aborted fetal cells." (ECF No. 29, ¶¶ 44-46, 59-60.)

Hurley was responsible for providing services to Ascension facilities. (ECF No. 29, ¶ 70.) Ascension refused to allow any exception to its requirement that all vendors be vaccinated against Covid-19. (ECF No. 29, ¶¶ 69, 72.) Therefore, Varian concluded

that it could not grant Hurley's request for an accommodation to continue to work as a software field service representative without being vaccinated. (ECF No. 29, ¶ 74.)

In denying Hurley's request for an accommodation, Varian stated, "If you do not intend to receive the vaccine, let us know if you wish to explore the possibility of reassignment." (ECF Nos. 29, ¶ 78; 31, ¶ 35.) Hurley responded, reiterating that he would not get vaccinated and stating he would prefer to remain in his current position. (ECF Nos. 29, ¶ 79; 31, ¶ 59.) Hurley never contacted Varian to explore the option of being reassigned to a position where vaccination would not be required or his request for an exemption accommodated. (ECF No. 29, ¶¶ 80, 82, 90-91.) Hurley, however, did look at Varian's internal job postings (as Varian told him to do), but because Varian required all customer-facing employees to be vaccinated, he did not identify any job that would not require him to be vaccinated. (ECF No. 31, ¶¶ 81, 84.)

When Hurley refused to receive a Covid vaccine, Varian terminated his employment effective December 10, 2021. (ECF No. 31, ¶ 93.) He sued Varian on January 11, 2023, alleging that Varian violated Title VII of the Civil Rights Act of 1964 by terminating him rather than accommodate his request for an exemption to its vaccination policy.

Hurley and Varian both moved for summary judgment. (ECF Nos. 19, 24.) Those motions are now fully briefed and ready for resolution.[1] All parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. § 636(c).

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d

---

[1] Varian submitted a reply in support of its proposed findings of fact. (ECF No. 35.) "Although Civil Local Rule 56(b)(3)(B) authorizes a reply to address any *additional* proposed findings of fact submitted by a party opposing the summary judgment motion, it does not allow the moving party to reply to the opposing party's response to the moving party's proposed findings of fact." *Maxwell v. Outagamie Cty. Jail*, No. 20-CV-386, 2022 U.S. Dist. LEXIS 214261, at *13 (E.D. Wis. Nov. 29, 2022) (quoting *Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2021 U.S. Dist. LEXIS 64654, at *7 (E.D. Wis. Apr. 1, 2021) (emphasis in original)); *Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, No. 20-CV-371, 2022 U.S. Dist. LEXIS 166539, at *3 (E.D. Wis. Sep. 15, 2022). Therefore, in accordance with Fed. R. Civ. P. 12(f), Varian's reply (ECF No. 35) is stricken.

The court also disregards the factual assertions supported only by citation to Varian's response to Hurley's proposed findings of fact. (*See, e.g.*, ECF No. 30 at 2.) Because the court's Local Rules do not permit a reply, the non-movant has no opportunity to challenge these factual assertions. Therefore, the court also disregards the factual assertions contained only in Varian's responses to Hurley's proposed findings of fact. A non-movant's response to the movant's proposed findings of fact is limited to providing "in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." Civ. L.R. 56(B)(2)(B)(i). Any additional fact offered in response must be presented in accordance with Civil Local Rule 56(b)(2)(B)(ii), which Varian also submitted (ECF No. 32).

551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

3. **Applicable Law**

"Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 143 S. Ct. 2279, 2286 (2023) (quoting 42 U.S.C. § 2000e(j)).

> To prove a Title VII claim for failure to accommodate religion, an employee must prove three things: (1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to the employer's attention; and (3) the religious observance or practice was the basis for the employee's discharge or other discriminatory treatment.

*Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013) (brackets and quotation marks omitted) (quoting *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012)).

Because only religious beliefs require accommodation, *Adeyeye*, 721 F.3d at 448 ("the belief necessitating the accommodation must actually be religious"), employers (and ultimately courts) must discern what constitutes a religious belief. "The term 'religion' includes all aspects of religious observance and practice, as well as belief …." *Id.* (quoting 42 U.S.C. § 2000e(j)). Beyond that statutory definition, courts have struggled

to define the bounds of religious beliefs and distinguish what is religious from what may be matters of opinion or belief, even sincerely held beliefs or opinions, that do not meet the definition of religious beliefs.

One such test "is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God." *Adeyeye*, 721 F.3d at 448 (quoting *United States v. Seeger*, 380 U.S. 163, 165 (1965)). A slightly different iteration is that religious beliefs are "sincerely h[eld] beliefs dealing with issues of ultimate concern that for her occupy a place parallel to that filled by God in traditionally religious persons …." *Id.* (quoting *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005); *see also Passarella v. Aspirus, Inc.*, No. 22-cv-287-jdp, 2023 U.S. Dist. LEXIS 40958, at *11-12 (W.D. Wis. Mar. 9, 2023) ("A belief is religious if it is: (1) 'religious in the person's own scheme of things'; and (2) sincerely held.") (quoting *Adeyeye*, 721 F.3d at 448). Given the intensely personal nature of such matters, a person's assertion that a belief is central to his faith is given great weight. *Adeyeye*, 721 F.3d at 448 (quoting *Seeger*, 380 U.S. at 184).

But it is not enough for an employee to simply be able connect a belief to something that is accepted as religious, *e.g.*, the Torah, Bible, or Koran, or to state it in terms of "religious vocabulary," *Passarella*, 2023 U.S. Dist. LEXIS 40958, at *14. Nor is it enough that a plaintiff reached a decision through prayer. *See id*.

The belief must be not only religious but sincerely held. *Adeyeye*, 721 F.3d at 448; *Villareal v. Rocky Knoll Health Care Ctr.*, No. 21-CV-729, 2022 U.S. Dist. LEXIS 210267, at *12 (E.D. Wis. Nov. 21, 2022) (citing *EEOC v. Ilona of Hung.*, 108 F.3d 1569, 1575 (7th Cir. 1997)). On the one hand, courts should be reluctant to question the sincerity of a person's beliefs. *Adeyeye*, 721 F.3d at 448 (quoting *Seeger*, 380 U.S. at 184). On the other hand, employers are not expected to accommodate every employee's demand for an exception to any policy or practice simply because the employee can couch his objection in terms of religion.

One relevant factor is the consistency with which the employee has followed the practice. *See Adeyeye*, 721 F.3d at 453. But perfect compliance is not required. *Id.* (citing *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012) ("[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?")). "The court does not concern itself with the truth or validity of religious belief," *Passarella*, 2023 U.S. Dist. LEXIS 40958, at *12, that is, whether the strictures of his professed religion actually require what he asserts, *see Adeyeye*, 721 F.3d at 452.

Care must be taken so as to not conflate the religious and sincerely held elements. A belief is not religious merely because it is sincerely held. Many people have sincere, even dogmatic, beliefs that are not religious in nature. Conversely, just because a belief is religious does not mean it is sincerely held. People often have religious

7
Case 2:23-cv-00042-WED   Filed 05/23/24   Page 7 of 20   Document 38

views—even central tenets of well-established faiths—that they follow with less than devout sincerity.

Complicated questions arise when matters of religion intersect with other sincerely held beliefs. For example, a person may hold deeply rooted, sincere, and unfailing *political* or *scientific* beliefs that tangentially or superficially intersect with his *religious* beliefs. Title VII does not protect "those with political or other beliefs unrelated to religion," *Bushouse v. Local Union 2209, UAW*, 164 F. Supp. 2d 1066, 1076 n.15 (N.D. Ind. 2001), even if they can be couched in religion. *See also Passarella*, 2023 U.S. Dist. LEXIS 40958, at *12 ("the court must distinguish between religious belief and other matters of personal conviction, because only religious beliefs warrant the heightened protection of the First Amendment or Title VII") (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). Because a religious person may regard his personal, political, moral, or ethical beliefs as indistinguishable from his religious views, courts and employers must attempt to untangle these discrete threads because only religion is protected under Title VII.

An employer must accommodate an employee's sincerely held religious belief unless doing so imposes an undue hardship. An accommodation imposes an undue hardship when the "burden is substantial in the overall context of an employer's business." *Groff*, 143 S. Ct. at 2294. This translates into a requirement "that an employer must show that the burden of granting an accommodation would result in substantial

increased costs in relation to the conduct of its particular business." *Id.* at 2295. "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id.* (brackets and quotation marks omitted). "[C]ourts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Id.* at 2296.

4. Analysis

   a. "Sincerely Held Religious Belief"

Varian contends that Hurley cannot prove he has a sincerely held religious belief against receiving the Covid-19 vaccine. Hurley similarly seeks summary judgment as to this element of his claim.

Hurley argues that Varian already conceded he has a sincerely held religious belief because, in reviewing his request for an accommodation it stated, "you appear to have a sincerely-held religious belief that conflicts with Varian's requirement that you receive a COVID-19 vaccine, potentially entitling you to an accommodation." (ECF Nos. 28 at 2; 31, ¶ 53.) In so arguing, Hurley skips over the fact that Varian qualified its statement by saying that Hurley "*appear[ed]* to have a sincerely-held religious belief."

Even if Varian's statement were unqualified, it would not constitute a judicial admission such that Varian would be bound to it. *See Passarella*, 2023 U.S. Dist. LEXIS

9
Case 2:23-cv-00042-WED   Filed 05/23/24   Page 9 of 20   Document 38

40958, at *17 (noting that an employer granting an accommodation in one context did not constitute an admission that the employee was entitled to an accommodation in all contexts). Varian did what employers are encouraged to do—assume the validity of an employee's request and try to work with him to find an accommodation. *See* EEOC Compliance Manual, § 12-I.A.3 ("Because the definition of religion is broad and protects beliefs, observances, and practices with which the employer may be unfamiliar, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief."). Holding that Hurley proved these aspects of his claim merely because Varian initially assumed the sincerity of his request would run contrary to public policy and encourage employers to treat every request skeptically and adversarially.

Hurley argues that he "connected his objection to getting the COVID-19 vaccine to his religious belief" because it is "his religious belief to seek guidance from the Holy Spirit and the fact that his body belongs to God and is a temple for the Holy Spirit." (ECF No. 28 at 6.) "[H]e learned COVID shots were tied to aborted fetal cell lines causing him to pray to the Holy Spirit for guidance," and "the Holy Spirit told him he could not take the shot as he could not have a clear conscience because abortion is a sin, and any sin would prevent him from walking in God's light." (ECF No. 28 at 6.) He states that "all vaccines are tied to abortion in one way or the other and that he cannot benefit directly or even indirectly from anything that has to do with an abortion, further

indicating abortion is murder and a sin, as well as going against the Holy Spirt after seeking his guidance." (ECF No. 28 at 6.) He concluded that receiving a vaccine would be a sin and "sin does not allow him to honor his relationship with God, Jesus Christ, and the Holy Spirit which he cannot allow to happen." (ECF No. 28 at 6.) "In making these statements, Plaintiff cited to multiple Bible verses identifying his belief is founded in religion." (ECF No. 28 at 6.)

An employer is not required to accommodate an employee's opinion or decision merely because the employee arrived at it through prayer. Religious persons may reach many important decisions through prayer, but that does not turn every important decision into a matter of a sincerely held religious belief. *See Passarella*, 2023 U.S. Dist. LEXIS 40958, at *15-16; *see also Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (rejecting plaintiff's assertion that she was entitled to a religious accommodation because she has a "God given right to make [her] own choices"; this "would amount to a blanket privilege and a limitless excuse for avoiding all unwanted obligations" (ellipses and quotation marks omitted)). A medical decision reached through prayer is still a medical decision. *Passarella*, 2023 U.S. Dist. LEXIS 40958, at *15-16.

Similarly, the oft-recited belief that a person's body is a temple, *see* 1 Corinthians 6:19-20, does not turn every objection to a Covid vaccine into a religious objection. It is one thing to object to every vaccine on this basis. But if a person concludes that the

vaccine would violate this belief because he regards the vaccine as unsafe or untested, that is a scientific rather than a religious objection. *Passarella*, 2023 U.S. Dist. LEXIS 40958, at *14 (W.D. Wis. Mar. 9, 2023). "The important question isn't whether an employee has a religious belief not to mistreat her body; the question is whether the employee's belief that the vaccine qualifies as mistreatment is itself based in religion." *Petermann v. Aspirus, Inc.*, No. 22-cv-332-jdp, 2023 U.S. Dist. LEXIS 53779, at *5 (W.D. Wis. Mar. 27, 2023). There is no evidence that Hurley's objection to medical treatment or what he took into his body extended beyond the Covid vaccine. *Cf. Antredu v. Mass. Dep't of Youth Servs.*, No. 22-12016-WGY, 2024 U.S. Dist. LEXIS 64535, at *6 (D. Mass. Apr. 9, 2024) (noting that, because plaintiff believes his body is a temple, he does not smoke or consume alcohol or caffeine).

Finally, Hurley's understanding that the Covid vaccines are all, one way or another, linked to abortion is another common objection to receiving such vaccines.[2] Hurley points to two abortions that occurred decades ago from which fetal cells were derived, were duplicated thousands of times, and are routinely used in all sorts of medical research. *See, e.g.*, Priyanka Runwal, *Here are the Facts about Fetal Cell Lines and COVID-19 Vaccines*, National Geographic (Nov. 19, 2021) https://www.national geographic.com/science/article/here-are-the-facts-about-fetal-cell-lines-and-covid-19-

---

[2] In July 2022, following Hurley's termination, a fourth Covid vaccine was introduced in the United States which has no association with fetal cells. *See Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132 (MSN/LRV), 2024 U.S. Dist. LEXIS 68603, at *17-18 (E.D. Va. Apr. 15, 2024).

vaccines; Meredith Wadman, *The Truth about Fetal Tissue Research*, Scientific American, (Dec. 9, 2015), https://www.scientificamerican.com/article/the-truth-about-fetal-tissue-research/.

By connecting his opposition to abortion to the biblical prohibition of murder, Hurley has adequately demonstrated that his opposition to abortion is founded in religion. Because Varian's only argument on this issue is that Hurley failed to show that his opposition to abortion was based on his religion (ECF No. 25 at 5-9), this aspect of its motion for summary judgment will be denied.

But a religious objection to abortion does not necessarily equate to a religious objection to a Covid vaccine, even if the person believes that the development of all Covid vaccines was connected to cells derived from aborted fetuses. *See Kiel v. Mayo Clinic Health Sys. Se. Minn.*, No. 22-1319 (JRT/ECW), 2023 U.S. Dist. LEXIS 135595, at *23 (D. Minn. Aug. 4, 2023). A person who receives a heart transplant from a donor who was murdered is obviously not on the same moral footing as a person who murders another so he can get his heart. Similarly, it is one thing to murder a person to collect on a life insurance policy and a very different matter to receive life insurance proceeds after a person is murdered. The court raises these issues not to delve into a theological debate. Rather, the court offers these examples only to underscore that demonstrating that a religion opposes murder and regards abortion to be murder does not necessarily

13

demonstrate that one has a sincerely held religious belief against obtaining any benefit tangentially connected to abortion.

Hurley does not contend there is a direct correlation between his being vaccinated and the number of abortions such that, by refusing to be vaccinated, there will be fewer abortions. Nor does he suggest that either of the two abortions that he references occurred because of scientists' desire to obtain fetal tissue for research. There is no suggestion that those abortions were anything other than routine elective abortions from which scientists put to lifesaving use tissue that otherwise would have been discarded.

It is a plaintiff's burden to prove that his religion compels what he alleges. By establishing only that his religion proscribed murder, Hurley has not sustained his burden to show that his religion prohibited him from obtaining a Covid vaccine because its safety and efficacy was tested with the use of fetal cells originally derived from an elective abortion. While the court must respect the deeply personal nature of religion and "tread lightly," *Adeyeye*, 721 F.3d at 453, permitting a plaintiff to establish a prima facie case through bald assertions that he believed that complying with his employer's policy would violate his religion would impermissibly relieve the plaintiff of his required burden. A plaintiff does not have to point to "a tenet or dogma of an established religious sect," *Dockery v. Maryville Acad.*, 379 F. Supp. 3d 704, 714 (N.D. Ill. 2019) (quoting *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 831 (1989)), but for the court

to grant summary judgment in his favor the court needs more than what Hurley has presented.

Nor has Hurley sustained his burden to prove that his belief that he cannot tangentially benefit from anything associated with abortion was sincerely held. The court is not presented with the sort of evidence routinely offered regarding the sincerity of a person's belief, such as the consistency with which he has adhered to the belief. For example, there is no evidence of whether Hurley consistently rejected all other vaccines and medical treatments that have a similar tangential relationship to fetal cells. Nor is there evidence that Hurley confirmed that all of Varian's services and products from which he made his living were entirely insulated from this sort of medical research. The court must leave it to the finder of fact to assess the credibility of Hurley's assertion that his opposition to the Covid vaccine was based on a sincerely held religious belief. *See EEOC v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De P.R.*, 279 F.3d 49, 56 (1st Cir. 2002).

In sum, Varian is not entitled to summary judgment on this aspect of Hurley's claim because Hurley has reasonably demonstrated that his opposition to abortion was based on religion. However, Hurley is not entitled to summary judgment because he has not shown that his religion—as opposed to, for example, his personal beliefs—prohibited him from receiving a vaccine because it was remotely associated with

abortion. Nor has Hurley demonstrated that, as a matter of law, his alleged religious opposition to the Covid vaccine was based on a sincerely held religious belief.

### b. Reasonable Accommodation

Hurley and Varian both seek summary judgment as to whether Hurley was denied a reasonable accommodation.

It is necessary to underscore that two policies are at issue—Varian's policy that its software field service representatives meet its customers' requirements to access its sites (ECF No. 29, ¶¶ 9, 39) and its policy that all of its "customer facing employees" must be vaccinated against Covid-19 (ECF No. 29, ¶¶ 47-53). Hurley erroneously focuses narrowly on only the hardship posed by Varian allowing a software field service representative from Illinois to service him to swap his Ascension clients with a software field service representative from Illinois. However, whether a hardship was undue requires a consideration of the cumulative effect of every action required to accommodate an employee, and not merely the final step where the efforts to accommodate an employee broke down. Actions that may be trivial in insolation may add up to an undue hardship.

Neither party has shown whether, as a matter of law, accommodating Hurley would pose an undue hardship for Varian or not. The parties have not presented evidence of the nature or extent of any hardship associated with exempting Hurley

16

from Varian's vaccination policy.[3] As for Varian's efforts to accommodate Hurley under its vendor access policies, the parties talk about concerns of how Hurley swapping customers with a software field service representative from Illinois would result in additional costs to Varian in the form of travel and vehicle expenses, and delays in customers receiving service. (*See, e.g.*, ECF No. 31, ¶ 55.) But neither party has provided the court with any attempt to quantify these costs or put them in the context of Varian's overall business. *See Groff*, 143 S. Ct. at 2294.

Nor has either party provided the court with an explanation of other consequences of such a switch. For example, the court has no information as to whether customers expected service within minutes rather than hours or days such that a delay in providing service as a result of a switch in who provided the service was not feasible. Nor is there evidence of the consequences of delay—for example, whether patients may suffer complications in their treatment or Varian's customers may choose to switch to a competitor. Nor is there any evidence of whether the field service representatives' relationships with their customers is such that a change in representative may result in a loss of goodwill for Varian.

The fact that Varian approved exemption requests from some of its hardware field service representatives does not prove that granting Hurley an accommodation

---

[3] Varian argues in its brief that it was concerned about civil liability if it allowed unvaccinated employees to enter cancer treatment facilities where they could infect an immunocompromised patient. (ECF No. 25 at 17-19.) But neither that rationale nor any other is set forth in the parties' proposed findings of fact.

would have been reasonable. Varian employed about eight times more hardware field service representatives than software field service representatives. (ECF No. 37, ¶ 93.) While Varian's roughly 50 software field service representatives each may handle a large territory covering up to 50 sites, each of its 400 hardware field representatives would be responsible for no more than seven individual machines. (ECF No. 37, ¶ 94.) Thus, it is reasonable to infer that it was much easier to shift around hardware field service representatives to accommodate a representative who was not allowed to go to a particular customer's site because of his refusal to receive a Covid vaccine. Varian did not approve a religious exemption for any of its software field service representatives. (ECF No. 37, ¶ 97.)

Hurley also notes that, after Varian fired him, it ended up having software field service representatives from other states cover his customers in much the same manner as he suggested as an accommodation. (*See* ECF No. 31, ¶ 95.) But Varian was not required to grant Hurley's requested accommodation merely because, by firing him, it suffered hardships much the same as or greater than it would have suffered simply by granting his accommodation. An employer that finds itself between a rock and a hard place in terms of choosing between two options, either of which would impose an undue hardship, is not required to choose accommodating the employee. Interpreting Title VII in this manner would require employers to routinely approve accommodations that constitute undue hardships, which Title VII does not require.

Finally, Varian has not proven that it offered Hurley a reasonable accommodation when it offered to explore reassigning him to another job, to which he responded that he preferred to stay in his current position. Reassignment is an accommodation only if there was an appropriate job that Varian could have reassigned Hurley to. Varian has not presented evidence that such a job existed.

Conversely, Hurley's assertion that he looked at Varian's internal job postings and all comparable jobs required vaccination is insufficient to prove that reassignment was not a viable accommodation. Per Varian's policy, all customer facing jobs required vaccination. But in inviting Hurley to communicate if he wished to explore reassignment, Varian noted that it may be able to accommodate his request in a different position. (ECF No. 37, ¶ 75.)

5. **Conclusion**

Hurley has failed to prove that, as a matter of law, his decision to not receive a Covid vaccine because it was tested using fetal cells derived from an elective abortion was based on a sincerely held religious belief. Disputes of material fact exists as to whether Hurley's requested accommodation would have imposed an undue hardship on Varian and whether Varian's offer to explore reassigning Hurley to a different position was a reasonable accommodation. Accordingly, the parties' motions for summary judgment must be denied.

**IT IS THEREFORE ORDERED** that David Hurley's motion for summary judgment (ECF No. 19) is **denied**.

**IT IS FURTHER ORDERED** that Varian Medical Systems's motion for summary judgment (ECF No. 24) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk shall set this matter for a telephonic conference to discuss scheduling this matter for trial.

Dated at Milwaukee, Wisconsin this 23rd day of May, 2024.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge